[Crim. No. 5449. Second Dist., Div. One. Sept. 27, 1955.]

THE PEOPLE, Respondent, v. STEPHEN HENRY
BINDER, Appellant.

· Dockweiler & Dockweiler and Frederick C. Dockweiler for
Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller,
Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district
attorney of Los Angeles County, appellant and the three other
defendants above named were charged in Count I with con-
spiracy to commit robbery; in Count II with attempted
robbery, while Count III charged the crime of robbery while
armed with deadly weapons. Appellant pleaded not guilty
to all counts. Subsequently, he withdrew his plea of not
guilty to the charge contained in Count III (robbery) and
pleaded guilty but denied he was armed. Pursuant to stipu-
lation, trial by jury was waived as to the issues of the degree
of the crime and whether or not appellant was armed. The
court found that the robbery was of the first degree and that
appellant was armed with a dangerous weapon. After refer-
ence of the matter to the probation department and receipt
of a report therefrom, probation was denied and appellant
was sentenced to the state prison. From the judgment of

conviction and the order committing him to state prison, appellant prosecutes this appeal.

Concerning the factual background surrounding this prosecution the report of the probation officer reflects that appellant was born in Brooklyn on February 21, 1935, and of the age of 20 years when the judgment herein was pronounced against him. He migrated to California arriving on December 25, 1954. When he was 16 years of age appellant quit school and started to work as a jockey or exercise boy at various stables and race tracks. In 1954 he was charged with sodomy, and received a suspended sentence on a reduced charge of simple assault.

On February 17, 1955, two of the appellant's codefendants bought two guns from a boy, and later on that day the four defendants planned a robbery. The plan involved watching the $100 window at Santa Anita race track to find someone with a lot of money. On February 18, 1955, they saw Mr. Hahn making bets at that window, and after the races they followed him to a motel. The appellant, who was armed with a gun, and two of his codefendants, one of whom was armed, approached the cabin which was occupied by Mr. and Mrs. Hahn. They thought that they had been seen, so they left. Later that evening, the appellant and one of his codefendants, each of whom was armed with an unloaded gun, knocked at the Hahns' door and Mr. Hahn answered. They asked him to move his car because, according to appellant, ''the sleeve of his (appellant's) coat was under Mr. Hahn's car.'' When Mr. Hahn turned, the appellant and his codefendant entered the cabin with their guns in their hands. They threatened the Hahns with harm and tied and gagged them. They took a large sum of money and jewelry from the Hahns.

The appellant and his codefendant split the money, each receiving about $385. They buried the jewelry and guns near their motel. The appellant and his three codefendants went to Tijuana, where they visited a house of prostitution. The appellant bought $100 worth of marijuana, and they returned to the United States with the contraband. They got a motel room in Chula Vista, where they smoked marijuana. They returned to Tijuana, where they again visited a house of prostitution. Then they returned to Chula Vista and thence to Arcadia, where they were arrested on February 21, 1955, the appellant's 20th birthday.

The probation officer's recommendation was as follows:

''Considering the seriousness of the offense and the defend-

ant's active participation, probation does not seem in order. Considering his age and minimum criminal background, as well as his need to establish definite ties in the community by preparing himself for an occupation for the future, the following recommendation is made.

"RECOMMENDATION:

"It is respectfully recommended that the defendant be referred to the California Youth Authority, and the matter be continued three weeks for report."

The sole question presented by this appeal is whether the court erred and abused its discretion in refusing to refer appellant, a 20-year-old offender, to the Youth Authority and instead sentencing him to imprisonment in the state prison for the term prescribed by law.

It is appellant's contention that based on the report and recommendation of the probation officer and in the light of cases interpreting the Youth Authority Act, a proper exercise of the wise discretion vested in the trial court required referral of appellant to the Youth Authority for its consideration and that the action taken by the court violated the spirit and purpose of the Youth Authority Act as set forth in Welfare and Institutions Code, section 1700. That section reads:

"Purpose of statute: Construction. The purpose of this chapter is to protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found guilty of public offenses. To this end it is the intent of the Legislature that the chapter be liberally interpreted in conformity with its declared purpose."

Section 1731.5 of the Welfare and Institutions Code provides as follows:

"After certification to the Governor as provided in this article a court *may* refer to the authority any person convicted of a public offense who comes within all of the following description:

"(a) Is found to be less than 21 years of age at the time of apprehension;

"(b) Is not sentenced to death, imprisonment for life, imprisonment for 90 days or less, or the payment of a fine, or after having been directed to pay a fine, defaults in the payment thereof, and is subject to imprisonment for more than 90 days under the judgment;

"(c) Is not granted probation.

"If the authority believes that any person referred to it as provided in this section can be materially benefited by the procedure and discipline of the authority, and that proper and adequate facilities exist for the care of such person, it shall so certify to the court. The court shall thereupon commit said person to the Authority." (Emphasis added.)

Appellant leans heavily upon the cases of *People* v. *Walker*, 82 Cal.App.2d 196, 200, 201 [185 P.2d 842], and *People* v. *Doyle*, 108 Cal.App.2d 827, 828 [240 P.2d 40], both of which hold that a claimed abuse of the trial court's discretion as herein contended may be reviewed on appeal. In the Walker case it was held (p. 202) that, "It thus appears that the trial court in passing upon the defendant's request for referral to the Youth Authority, failed to apply proper criteria in the attempted exercise of his discretion," and remanded the cause to the trial court "in order that such discretion may be exercised on the basis of the defendant's youth and his ability to profit by a commitment to the authority." In the Walker case, the court based its decision on the conclusion (p. 202) that, "It therefore appears that although the trial judge felt, and properly so, that the defendant definitely came within the provisions of the act, nevertheless because of the reasons stated and in particular the defendant's sanity, he believed that under the circumstances he had no discretion but to send the defendant to a state prison."

In the case now engaging our attention there is no showing that the trial court failed "to apply the proper criteria" in the exercise of its discretion as was the case in *People* v. *Walker, supra*. Nor does the record show that the trial court overlooked the purpose and intent of the Youth Authority Act.

In the case of *People* v. *Doyle, supra,* while the court held that the alleged abuse of the trial court's discretion in refusing to refer a youthful offender to the Youth Authority could be reviewed on appeal, it was also determined that the certification to the authority is not mandatory but is discretionary. That the word "*may*" in section 1731.5 of the Welfare and Institutions Code is used in the permissive sense.

That the Legislature intended to commit to the discretion of the trial judge whether a youthful offender, eligible for referral to the Youth Authority should be so committed is evidenced by legislative action when in 1945 in amending section 1731.5 the lawmakers deleted the words "shall commit," as formerly used in the first part of that section and substituted the words "may refer."

From a review of the record before us in the instant case we are satisfied it cannot be held that the trial court abused its discretion.

The court had before it and considered the report of the probation officer which reflected appellant's history of leaving school at the age of 16, embarking upon a career as a jockey and exercise boy at race tracks; his conviction of simple assault, reduced from a sodomy charge; his planning the armed robbery with which he was charged, in conjunction with his three confederates. The manner in which the robbery was perpetrated, in the course of which they threatened the victims with harm and tied and gagged them. The probation officer's report further advised the court of appellant's conduct after consummation of the robbery, when they divided the spoils, went to Mexico, visited houses of prostitution, bought marijuana which they brought to the United States. All these matters are shown by the record to have been considered by the trial court, which thereupon decided that appellant should not be referred to the Youth Authority, but on the contrary should be sent to the state prison. It is manifest that there was nothing approaching an abuse of discretion in this case.

The judgment appealed from is affirmed.

Doran J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 26, 1955.