Filed 4/25/22  P. v. Collins CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DENISHO DEMMETRIUS COLLINS,<br><br>Defendant and Appellant. | C092929<br><br>(Super. Ct. No. 06F07216) |

This case comes to us for the fourth time on appeal.[1]  Defendant Denisho Demmetrius Collins appeals the trial court's order denying his motion to strike a 20-year firearm enhancement (Pen. Code, § 12022.53, subd. (c))[2] after this court remanded the matter for resentencing on the enhancement following the passage of Senate Bill No. 620 (2017-2018 Reg. Sess.) (Stats. 2017, ch. 682, § 2) while defendant's second appeal was

---

[1]  The record on appeal incorporates the records, including our prior opinions, in defendant's three previous appeals in case Nos. C062398, C083771, and C091738.

[2]  Further undesignated statutory references are to the Penal Code.

1

pending. He argues the trial court abused its discretion in denying his motion to strike the enhancement because the court based its decision on an erroneous factual finding that he acted as a leader during the gang shooting that resulted in an accomplice's death. He further contends the shooting was not more dangerous than other gang shootings, and that the trial court failed to properly consider defendant's crime-producing background in mitigation. Alternatively, he contends the matter should be remanded to allow the trial court to exercise its discretion to impose a 10-year, lesser firearm enhancement also found true by the jury (§ 12022.53, subd. (b)), and that if his counsel forfeited any appellate arguments, he received ineffective assistance of counsel.

Finding no merit to defendant's contentions, we shall affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A jury found defendant guilty of the first degree murder of David Perkins (§ 187, subd. (a), count one), after hearing evidence that Perkins, defendant, and others set out to avenge the killing of a fellow gang member. Defendant was also found guilty of unlawful possession of an assault weapon (§ 12280, subd. (b), count two), and being a felon in possession of a firearm (§ 12021, subd. (a), count three). The jury found true that during the commission of the murder defendant personally used and discharged a firearm (§ 12022.53, subds. (b) & (c)), and that he committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)). For the murder conviction, defendant was sentenced to 25 years to life plus a consecutive 20 years for the firearm enhancement and a consecutive 10 years for the gang enhancement.

In defendant's first appeal, we ordered the 10-year gang enhancement stricken and replaced with a minimum parole eligibility of 15 years under section 186.22, subdivision (b)(5); in all other respects we affirmed the judgment. (*People v. Collins* (May 9, 2011, C062398) [nonpub. opn.].) Defendant was thus left with a sentence of 25 years to life, plus 20 years on the firearm enhancement under section 12022.53, subdivision (c), and three additional years on the determinate counts.

2

Later, defendant filed a petition for writ of habeas corpus in the trial court challenging his first degree premeditated murder conviction based on the natural and probable consequences doctrine under *People v. Chiu* (2014) 59 Cal.4th 155. The People conceded the *Chiu* error and requested that defendant's first degree murder conviction be reduced to second degree murder. The court reduced the conviction to second degree murder and resentenced defendant to 15 years to life for the murder, plus 20 years for the section 12022.53, subdivision (c) firearm enhancement, plus a minimum parole period of 15 years, and left the remaining counts unchanged.

Defendant appealed a second time, and while his appeal was pending, Senate Bill No. 620 became law; it amended section 12022.53, subdivision (h) to give trial courts discretion to strike firearm enhancements. (Stats. 2017, ch. 682, § 2.) We remanded the matter to the trial court to determine whether to strike the firearm enhancement under section 12022.53, subdivision (c) in light of Senate Bill No. 620. (*People v. Collins* (May 1, 2018, C083771) [nonpub. opn.].)

Upon remand, defense counsel moved to strike the 20-year firearm enhancement. To support his request, defendant submitted a brief and attached numerous investigative reports with interviews of family members describing defendant's difficult childhood with a gang-member father and a drug and alcohol addicted mother.

At a hearing on the motion to strike the firearm enhancement, defense counsel referenced the written materials he had submitted, but did not make any further arguments to the court. The court acknowledged having received and read defendant's written submissions. The prosecutor then argued that the facts and circumstances of defendant's case did not justify striking the firearm enhancement because defendant essentially "went out hunting," and the victim was killed by friendly fire.

Before ruling, the trial judge, who presided at defendant's original trial, summarized the facts of defendant's case as follows: A number of known gang members got together and "literally went hunting for another human being they perceived to be a

rival gang member." When they could not find the person they initially were looking for at various locations, the group got out of their cars with weapons, went down the street, and picked a house where they perceived a rival gang member lived based on the color of the person's clothing. While standing in an uneven line, they opened fire in broad daylight at the house. The group "shot a lot," and it was defendant's own weapon that shot his fellow gang member. According to the court, defendant "was, in many respects, a leader of this particular event, perhaps even a little less so than the person that ended up being killed, but he was at least on par in terms of the reasons this activity happened in the first place . . . ."

After acknowledging that it had the authority to strike the enhancement, the court declined to exercise its discretion to do so. Under the circumstances, the court believed it would be an abuse of discretion to strike the firearm enhancement. The court reasoned that firearm enhancements were intended to "discourage, prevent, [and] dissuade individuals from participating in this type of just crazy [gang] activity," which was "really unusual . . . really horrifying . . . really scary, and . . . really dangerous." As someone who came from a large county with a city inundated with gangs, the judge found that "this [was] one of the more horrifying events that [he had] ever even heard of," and it was precisely this type of behavior that firearm enhancements were designed to impact by making an impression on individuals such as defendant.

Defendant timely appealed.

**DISCUSSION**

**I**

Senate Bill No. 620 gave trial courts discretion to strike various firearm enhancements that they were previously required to impose, including the two firearm enhancements found true by the jury here under section 12022.53, subdivisions (b) and (c). (§ 12022.53, subd. (h) [giving trial courts discretion "in the interest of justice pursuant to Section 1385 and at the time of sentencing, [to] strike or dismiss an

4

enhancement otherwise required to be imposed by this section"].) In this case, the trial court imposed a 20-year firearm enhancement for personally and intentionally discharging a firearm (§ 12022.53, subd. (c)) and stayed a 10-year firearm enhancement for personally using a firearm during the offense. (§ 12022.53, subd. (b).)

Defendant contends the trial court abused its discretion by declining to strike his 20-year firearm enhancement. He argues the court mischaracterized him as a "leader" during the gang shooting, misevaluated the shooting as greatly aggravated even though only a co-perpetrator was killed and only one innocent victim was in the zone of danger, and by finding that defendant's crime-producing background was not sufficiently mitigating to warrant striking the firearm enhancement. We are not persuaded.

In resentencing a defendant under Senate Bill No. 620, "factors that the trial court must consider when determining whether to strike a firearm enhancement under section 12022.53, subdivision (h) are the same factors the trial court must consider when handing down a sentence in the first instance." (*People v. Pearson* (2019) 38 Cal.App.5th 112, 117 (*Pearson*); *id*. at p. 114 [trial court did not abuse its discretion in declining to strike a firearm enhancement under Sen. Bill No. 620].) Thus, a trial court should consider the enhancement-specific considerations described in California Rules of Court, rule 4.428(b),[3] the general sentencing factors listed in rule 4.410, and the circumstances in aggravation and mitigation listed in rules 4.421 and 4.423. (*Pearson*, at p. 117; *People v. Rocha* (2019) 32 Cal.App.5th 352, 359 [in considering whether to strike a firearm enhancement under Pen. Code § 12022.53, subd. (h), a trial court may consider the rights of the defendant, the interests of society represented by the People, and individualized considerations pertaining to the defendant and his or her offenses and background].)

---

[3] Further undesignated rule references are to the California Rules of Court.

We review the trial court's decision to strike or not to strike a firearm enhancement under Senate Bill No. 620 for abuse of discretion. (*Pearson, supra*, 38 Cal.App.5th at p. 116; see also *People v. Shaw* (2020) 56 Cal.App.5th 582, 587 [in context of Sen. Bill No. 1393, trial court does not abuse its discretion by declining to strike a prior serious felony conviction if the court evaluates all relevant circumstances to ensure that the punishment fits the offense and the offender].) Given the applicable standard, we will not reverse merely because reasonable people might disagree. (*Pearson*, at p. 116, citing *People v. Carmony* (2004) 33 Cal.4th 367, 376-377 [because a trial court's discretionary decision to dismiss or to strike a sentencing allegation under § 1385 is reviewable for abuse of discretion, it will not be reversed merely because reasonable minds may differ].) Unless the record affirmatively shows otherwise, the trial court is presumed to have considered the factors enumerated in the rules of court. (*Pearson*, at p. 117; rule 4.409 ["Relevant factors enumerated in these rules . . . will be deemed to have been considered unless the record affirmatively reflects otherwise"].)

Here, the trial court's comments during the hearing show it considered appropriate factors in deciding whether or not to exercise its discretion to strike defendant's firearm enhancement. As previously noted, the court found defendant's conduct was exceedingly "dangerous" and "horrifying," implicitly finding the aggravating factors that "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" (rule 4.421(a)(1)), and that defendant had "engaged in violent conduct that indicat[ed] a serious danger to society" (rule 4.421(b)(1)). The court's general description of how the events unfolded, which defendant does not contest, supports this conclusion. As the court explained, defendant joined together with several other gang members, hunted for a rival gang member to extract revenge, and then, when they could not locate their intended victim, shot numerous rounds in the middle of the day at a house with a different individual whom they believed might be a rival gang member simply based on his clothing.

The fact that only one innocent person may have been in the danger zone, or that other gang killings have resulted in the loss of multiple innocent lives, as defendant argues, does not make defendant's conduct less violent, dangerous, or callous. Indeed, because defendant and his cohorts targeted an innocent man who apparently happened to be in the wrong place at the wrong time and was not armed for battle as defendant's group was, it is reasonable to infer the court considered the innocent man "particularly vulnerable." (Rule 4.421(a)(3).) And the court's description of how defendant and his gang "hunted" their intended target also indicates that the court believed the crimes involved a certain level of "planning." (Rule 4.421(a)(8).)

It is also readily apparent from the court's statement that firearm enhancements "were designed to impact and make an impression on individuals precisely like [defendant] for his activity in this particular incident," that the court properly considered multiple general sentencing objectives, including "[p]rotecting society" (rule 4.410(a)(1)), "[p]unishing the defendant" (rule 4.410(a)(2)), and "[d]eterring others from criminal conduct by demonstrating its consequences" (rule 4.410(a)(4)). Thus, the trial court properly evaluated the relevant circumstances to ensure that the punishment fit the offense and the offender. (*People v. Shaw, supra*, 56 Cal.App.5th at p. 587.)

While it is true the court referred to defendant as a "leader," it also acknowledged that defendant's role was less than Perkins, who was shot and killed. Viewing the totality of the court's statements in context of the entire hearing, rather than in isolation as defendant does, we conclude that the court simply meant, as it further stated, that defendant's involvement was "at least on par" with the other individuals involved. That is, defendant was an active participant in the crime rather than a passive bystander who happened to be swept up in the mayhem unleashed that day.

To the extent defendant argues that the court failed to consider his criminal upbringing as a factor in mitigation, we disagree. We presume the trial court considered all relevant criteria, including any mitigating factors when it made its discretionary

7

sentencing decision. (*People v. Holguin* (1989) 213 Cal.App.3d 1308, 1317-1318), and defendant presents no evidence to overcome this presumption. The record shows the court read and considered the family interviews depicting defendant's difficult childhood punctuated with criminal conduct committed by the adults in his life. The court had no obligation to expressly state reasons as to why it deemed the proffered factor in mitigation unpersuasive. (*People v. Salazar* (1983) 144 Cal.App.3d 799, 813 [trial court may minimize or even entirely disregard mitigating factors without stating its reasons].) The trial court reasonably could have determined that defendant's crime-ridden childhood, although mitigating, did not outweigh the multiple aggravating factors noted above. While defendant may disagree with how the court weighed the factors in aggravation and mitigation, that is no basis to find an abuse of discretion. (*Pearson, supra*, 38 Cal.App.5th at p. 116 [appellate court will not reverse merely because reasonable people might disagree].)

The trial court did not depart from applicable legal standards here and denying defendant's request to strike the 20-year firearm enhancement was squarely within the bounds of the court's discretion.

## II

Defendant next contends there is a possibility the trial court did not understand it had discretion to strike the 20-year firearm enhancement (§ 12022.53, subd. (c)) and lift the stay on the lesser 10-year firearm enhancement (§ 12022.53, subd. (b)) also found true by the jury. Nothing in the record supports defendant's speculative argument.

The trial court expressly stated it was aware that it had the "authority to strike the enhancement in this case," and case law was clear at the time of the hearing that striking or dismissing a more serious firearm enhancement would leave intact a jury's remaining true findings on any lesser firearm enhancement, which would have to be unstayed unless the court also struck the lesser enhancement in the interest of justice. (See, e.g., *People v. Morrison* (2019) 34 Cal.App.5th 217, 222-224.) On appeal, we presume the trial court

8

knew and applied the correct statutory and case law when exercising its official duties. (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.) Thus, we presume the trial court understood that it had discretion to strike the 20-year firearm enhancement and lift the stay on the 10-year enhancement instead even if defendant's sentencing brief did not specifically alert the trial court to that option.

### III

Because we have not found that defense counsel forfeited any meritorious arguments on appeal, we need not address defendant's ineffective assistance of counsel argument.

### DISPOSITION

The judgment is affirmed.

_____/s/_____
RAYE, P. J.

We concur:


_____/s/_____
DUARTE, J.


_____/s/_____
HOCH, J.

9